IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JASON LEOPOLD**, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 22-cv-453 (DLF) |
| | ) |
| **CENTRAL INTELLIGENCE AGENCY**, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

This case concerns a Freedom of Information Act (FOIA) request submitted to the Office of Inspector General (OIG) for the Central Intelligence Agency (CIA). The requester sought documents concerning investigations of alleged misconduct that were concluded in 2020 and 2021. The CIA identified sixty-seven responsive records and produced sixty-five of them with redactions, withholding the remaining two. The investigations described in those documents involved allegations of fraudulent expenses by CIA officers, misuse of Agency systems, and theft, among other subjects. Because of the nature of the Agency's work, most of these records contained classified information, which was withheld under FOIA Exemption 1. Almost all of the records contained information about "intelligence sources and methods," 50 U.S.C. § 3024(i)(1), and "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency," *id.* § 3507, which was withheld under FOIA Exemption 3. Several records contained information that could have revealed the identity of a confidential human source, or information provided by such a source; that information was withheld under FOIA Exemption 7(D). And, finally, most of the records contained information about investigative techniques or procedures,

which was withheld under FOIA Exemption 7(E).  The CIA now moves for summary judgment on the lawfulness of these withholdings.

## BACKGROUND

In December 2021, an investigative reporter requested "from the Central Intelligence Agency Office of Inspector General a copy of the concluding document . . . concerning investigations closed in calendar year 2020 and 2021 concerning misconduct, actual or alleged." Decl. of Mary C. Williams ("Williams Decl."), Ex. A at 2.  This suit followed in February 2022. ECF No. 1.  From August 2022 through April 2024, the CIA processed sixty-seven investigative reports responsive to this request.  Williams Decl. ¶¶ 11–13.  Two of those reports were withheld in full; the others were withheld in part.  *Id.* ¶ 13.

## LEGAL STANDARD

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Dean v. DOJ*, 87 F. Supp. 3d 318, 320 (D.D.C. 2015) (citation omitted); *accord Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011) ("[T]he vast majority of FOIA cases can be resolved on summary judgment.").  A court reviews an agency's response to a FOIA request *de novo*.  5 U.S.C. § 552(a)(4)(B).

FOIA represents a delicate balance "between the right of the public to know and the need of the Government to keep information in confidence." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted).  In drafting the statute, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information," and therefore "provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982).  Although these exemptions are to be

"narrowly construed," *id.* at 630 (citation omitted), courts must still give them "meaningful reach and application," *John Doe*, 493 U.S. at 152.

"An agency that has withheld responsive documents pursuant to a FOIA exemption can carry its burden to prove the applicability of the claimed exemption by affidavit. . . ." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quotation and citation omitted). This is not a high bar: "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374–75 (citation omitted).

## ARGUMENT

Plaintiffs challenge all of the CIA's withholdings under claim of exemption except those made under FOIA Exemptions 6 and 7(C), which protect personal privacy. The CIA now moves for summary judgment on the propriety of the challenged withholdings. In support of its motion, the CIA has submitted a declaration from Mary C. Williams, accompanied by a *Vaughn* index of the withheld material, which is Exhibit E to that declaration. For the reasons set forth below, the CIA's withholdings comply with the Freedom of Information Act.

### A. All classified information was properly withheld from the responsive records under Exemption 1.

This case concerns sixty-seven investigative reports prepared by the CIA Office of Inspector General, which provides "objective and independent oversight into the programs and operations of the CIA." Williams Decl. ¶ 17. Because the CIA collects and analyzes foreign intelligence, "many of CIA OIG's investigative reports contain classified information that would

reveal specific intelligence sources, methods, and activities, among other sensitive information." *Id.* In this case, the requested reports contain "classified information that would reveal the locations of Agency facilities; the existence of intelligence activities; information about CIA's operational tradecraft; and the existence of CIA's partnerships with foreign liaison services," as well as "classified . . . information about the Agency's organization and functions." *Id.* ¶ 18; *see id.* ¶ 23. Classified information was withheld from fifty-six reports under FOIA Exemption 1.[1]

Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Executive Order 13,526, which currently governs the classification of national security information, establishes four prerequisites: (1) an original classification authority classifies the information; (2) the U.S. Government owns, produces, or controls the information; (3) the information is within one of eight protected categories listed in section 1.4 of the Order; and (4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and identifies or describes that damage. Exec. Order No. 13,526, § 1.1(a), 75 Fed. Reg. 707, 707 (Dec. 29, 2009). The categories of information listed in section 1.4 include information that "pertains to . . . intelligence activities," "intelligence sources or methods," or "foreign relations or foreign activities of the United States." *Id.* § 1.4(c)–(d). Such information is "properly classified . . . in the interest of national security, and therefore fall[s] within Exemption 1." *Larson*, 565 F.3d at 864.

---

[1] *See Vaughn* Index, Nos. 1–7, 9–11, 13–18, 20–24, 27–33, 35–38, 40–42, 44–47, 49–57, 60–67.

Under FOIA Exemption 1, the CIA withheld many categories of classified information. The Agency withheld "information regarding undisclosed locations of Agency facilities" in foreign countries. *Id.* ¶ 24. The CIA withheld classified "information that would reveal the existence of specific CIA intelligence activities, as well as the nature and extent of those intelligence activities." *Id.* ¶ 25. It withheld classified information about "specific types of intelligence methods currently in use by the CIA," *id.* ¶ 26, as well as classified "methods used by the Agency to determine employment suitability and . . . access to classified information," *id.* ¶ 27. The CIA withheld "classified details of the Agency's information technology systems." *Id.* It also withheld information that "relates to intelligence sources," *id.* ¶ 28, and "information about foreign liaison partners that work with the CIA to share intelligence information and conduct operations," *id.* ¶ 30.

The CIA determined that "disclosure of this information could reasonably be expected to result in serious damage to the national security of the United States." *Id.* ¶ 31. "Official acknowledgement that the CIA has or had a facility in a particular location abroad could cause the government of the country in which the installation is or was located to take countermeasures, either on its own initiative or in response to public pressure, to eliminate the CIA's presence within its borders or curtail cooperation with CIA." *Id.* ¶ 24. "Disclosing details of the intelligence methods . . . contained in the OIG documents therefore would significantly impair the CIA's ability to continue to collect intelligence and conduct operations." *Id.* ¶ 26. To release "classified details of the Agency's information technology systems . . . would impair the CIA's ability to safeguard the information it collects." *Id.* ¶ 27. And disclosing information about clandestine human sources "could harm the individual and inhibit the CIA's ability to collect foreign intelligence from that individual and others in the future." *Id.* ¶ 29. Finally, failing to protect "information about foreign

liaison partners that work with the CIA to share intelligence information and conduct operations" would imperil those partnerships, "which are critical to confronting threats to . . . national security." *Id.* ¶ 30.

"Recognizing that national security is primarily the province of the Executive," courts in this Circuit "decline to micromanage agency determinations that [classified] information should remain secret." *Schaerr v. DOJ*, 69 F.4th 924, 929 (D.C. Cir. 2023); *see ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011) (explaining that "courts lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case"). Instead, courts "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record." *Larson*, 565 F.3d at 864 (quotation omitted); *see Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("[W]e have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."). To that end, courts "reviewing agency affidavits invoking [FOIA] Exemption One . . . simply consider whether the agency has plausibly asserted that the matters are in fact properly classified pursuant to an executive order." *Schaerr*, 69 F.4th at 929; *see Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (explaining that "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified").

The Williams Declaration more than plausibly asserts that the material withheld under Exemption 1 was properly classified, or not segregable from classified information. An original classification authority confirmed that this information was properly classified; the United States

government owns and controls the witheld information; it falls within the classification categories listed in Section 1.4 of Executive Order 13,526; and the original classification authority determined that unauthorized disclosure could reasonably be expected to result in damage to the national security, and identified or described that damage. Williams Decl. ¶ 21; *see supra* at 5–6. Moreover, the declaration establishes that the CIA "conducted a page-by-page and line-by-line review of these OIG documents," releasing "all reasonably segregable, non-exempt information." Williams Decl. ¶ 19. Indeed, the CIA "released information in certain paragraphs in the OIG documents that were previously marked as SECRET where it was determined that the information was non-exempt and segregable." *Id.* ¶ 52; *see id.*, Exs. F, G & H. The CIA is therefore entitled to summary judgment on the lawfulness of its Exemption 1 withholdings.[2]

      **B.**    **Information exempted from disclosure by the CIA Act and the National Security Act was properly withheld under Exemption 3.**

Exemption 3 incorporates into FOIA "the protections of other shield statutes," *ACLU*, 628 F.3d at 617–18, by excluding from its purview "'matters' that are 'specifically exempted from disclosure by statute' if the statute 'requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue' or 'establishes particular criteria for withholding or refers to particular types of matters to be withheld,'" *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (quoting 5 U.S.C. § 552(b)(3)). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific

---

[2] The CIA "bears the burden of showing that it 'reasonably foresees that disclosure would harm an interest protected by an exemption'" other than Exemption 3. *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting 5 U.S.C. § 552(a)(8)(A)(i)). But as explained below, *infra* at 9, all of the classified material was also properly withheld under Exemption 3. And in any event, the CIA's determination that "disclosure of this [classified] information could reasonably be expected to result in serious damage to the national security of the United States," Williams Decl. ¶ 31, for the reasons explained above, *supra* at 5–6, satisfies its burden to demonstrate a reasonably foreseeable harm.

documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Id.* at 197 (quoting *Morley*, 508 F.3d at 1126).

In this case, the CIA relied on the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), and the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, to withhold information under Exemption 3. The former states that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(i)(1). The latter provides in relevant part that the CIA shall be exempt from disclosing "the organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency." 50 U.S.C. § 3507. The D.C. Circuit has held that both statutes may be used to withhold information under Exemption 3. *DiBacco v. Dep't of Army*, 926 F.3d 827, 834–35 (D.C. Cir. 2019) (citing *DiBacco*, 795 F.3d at 183 (National Security Act); *Baker v. CIA*, 580 F.2d 664, 667 (D.C. Cir. 1978) (CIA Act)). And the material withheld by the CIA falls within the scope of these exempting statutes.

Under the CIA Act,[3] the Agency withheld "the full names of CIA employees and other personally identifiable information, including official position titles, salary grade level, identification numbers, contact information, and signatures," as well as "information involving CIA components and contractors that reveals functional and organizational information, among other items." Williams Decl. ¶ 34. The CIA also withheld "information about the CIA's functions, regulations, and policies related to CIA programs and operations," where disclosure of such regulations "would directly reveal functions of the CIA." *Id.* ¶ 33. All of this information falls within the scope of the CIA Act and was therefore properly withheld under Exemption 3.

---

[3] The Agency made withholdings under the CIA Act from all sixty-seven responsive records.

The Supreme Court has recognized the "wide-ranging authority" provided by the National Security Act,[4] entrusting the agency to "weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the Agency's intelligence gathering process." *See CIA v. Sims*, 471 U.S. 159, 180 (1985). Rather than place any limit on the scope of the Act, "Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to provide, information the Agency needs to perform its statutory duties with respect to foreign intelligence." *Id.* at 169–70; see *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980) (explaining that the only question for the court is whether the agency has shown that responding to a FOIA request "could reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods").

The CIA withheld under the National Security Act the same classified information that was also, in the alternative, withheld under Exemption 1. Williams Decl. ¶ 38. In addition, the CIA withheld information about "some aspects of the Agency's intelligence sources and methods that are unclassified, but would nevertheless reveal intelligence sources and methods protected by the National Security Act if disclosed." *Id.* ¶ 38. The CIA also withheld "classification and dissemination control markings," which "reveal details about the sensitivity of the underlying intelligence interest, sensitive collection sources or methods, foreign sensitivities, and procedures for gathering, protecting, and processing intelligence." *Id.* ¶ 39. All of this information falls within the scope of the National Security Act and was therefore properly withheld under Exemption 3.[5]

---

[4] Under the National Security Act, the CIA made withholdings from all but two responsive records. *See Vaughn* Index Nos. 12 & 39.

[5] Because Exemption 3 applies to material "specifically exempted from disclosure by statute," 5 U.S.C. § 552(b)(3), such "disclosure is prohibited by law" under 5 U.S.C. § 552(a)(8)(A)(i), and that provision therefore does not require an independent showing of foreseeable harm. *Leopold*,

### C. The CIA properly withheld information under Exemptions 7(D) and 7(E).

Because the CIA Office of Inspector General conducts "investigations of alleged violations of federal criminal law[] and Agency regulations and policies related to CIA programs and operations," Williams Decl. ¶ 44, its investigative reports are "compiled for law enforcement purposes" within the meaning of FOIA Exemption 7.  5 U.S.C. § 552(b)(7); *Transparency Project v. DOJ*, 2022 WL 18776191, at *35 (E.D. Tex. Sept. 9, 2022) ("Exemption 7 protects information and records generated by CIA's Office of Inspector General that were compiled for law enforcement purposes."); *see Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 528–29 (S.D.N.Y. 2010).

Exemption 7(D) authorizes withholding where such records or information "could reasonably be expected to disclose the identity of a confidential source."  5 U.S.C. § 552(b)(7)(D). "[A] source is confidential within the meaning of Exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred."  *Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007) (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)). Because, as a matter of policy, the CIA OIG generally "does not disclose the identities of persons it interviews," Williams Decl. ¶ 49, those interviewees operate under an assurance of confidentiality.  The CIA therefore withheld the names of certain interviewees under Exemption 7(D).  *Id.*  And it also withheld "statements of the interviewees" when those statements "would identify them by virtue of their position in the Agency or their role in, or knowledge of, the

---

94 F.4th at 37.  Nonetheless, the CIA reasonably foresees that relevant harms would result from the release of the material it has withheld under Exemption 3.  Williams Decl. ¶¶ 36, 41.

underlying events surrounding certain investigations." *Id.* This information was within the scope of Exemption 7(D).[6]

Exemption 7(E) protects records or information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The D.C. Circuit has explained that "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). To clear that "relatively low bar," an agency must show only that the release of a record might increase the risk "that a law will be violated or that past violators will escape legal consequences." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

Under Exemption 7(E), the CIA withheld "information [that] identifies the CIA systems searched and the records OIG sought as part of its investigations." Williams Decl. ¶ 51. It also withheld information that would identify "the sources who report misconduct and the OIG's methods for investigating such reports." *Id.* The CIA withheld such information from fifty-four investigative reports.[7] Because disclosure "would reveal the extent to which the OIG records, catalogs, or otherwise compiles specific information as part of its investigations," the withheld information "could be used to try to circumvent those techniques and procedures, or neutralize

---

[6] Personally-identifying information related to confidential sources was also properly withheld under Exemption 7(D). Because those withholdings were also justified by Exemptions 6 and 7(C), which Plaintiffs do not contest here, the Court need not reach the propriety of those withholdings. *See* Williams Decl. ¶ 51.

[7] *See Vaughn* Index, Nos. 1–6, 9–10, 12–19, 21–34, 40–47, 49–53, 55–61, 63–65, 67.

their effectiveness," thereby risking circumvention of the laws that OIG enforces. *Id.* This information was therefore within the scope of Exemption 7(E).[8]

Moreover, all of the information within the scope of Exemptions 7(D) and 7(E) was properly withheld because the CIA reasonably foresees that releasing it would "harm an interest protected by" those exemptions. 5 U.S.C. § 552(a)(8)(A)(i). The information withheld under Exemption 7(D) "could reasonably be expected to disclose the identity of a confidential source." *Id.* § 552(b)(7)(D). And, as the CIA has explained, because "[t]he performance of the OIG's mission to conduct independent audits, investigations, and reviews of CIA programs and operations is heavily reliant upon its access to unfiltered information provided by confidential sources," the "[d]isclosure of the sources . . . would severely compromise the OIG's ability to perform those duties." Williams Decl. ¶ 50. Preserving the effectiveness of law enforcement investigations that rely on confidential source is an interest protected by Exemption 7(D), which the release of this information would foreseeably harm. *See Kendrick v. FBI*, 2022 WL 4534627, at *8 (D.D.C. Sept. 28, 2022).

And as this Court has observed, "Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm." *Groenendal v. Executive Office for U.S. Attorneys*, 2024 WL 1299333, at *12 (D.D.C. Mar. 27, 2024) (Friedrich, J.) (quoting *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 127–28 (D.D.C. 2021)); *see Holmes-Hamilton v. FBI*, 2024 WL 3924558, at *6 (D.D.C. Aug. 23, 2024). "Put another way, an agency's ability to demonstrate that the release of certain specific material 'might create a risk of circumvention of the law'

---

[8] Because "[c]ertain techniques and procedures employed by the OIG to conduct its investigations also constitute intelligence methods protected from disclosure under the National Security Act," some of the information withheld under Exemption 7(E) was also withheld under Exemption 3. Williams Decl. ¶ 51.

- 12 -

provides, at minimum, a strong 'clue[ ]' that disclosure will lead to the type of harm that Exemption 7(E) aims to prevent." *Reps. Comm. for Freedom of the Press v. FBI*, 754 F.Supp.3d 56, 67 (D.D.C. 2024) (quoting *Project for Priv. & Surveillance Accountability, Inc. v. DOJ*, 2024 WL 2864191, at *8 (D.D.C. June 6, 2024) (alteration in original)) ("*PPSA*"); *see also Kendrick v. FBI*, 2022 WL 4534627, at *10 (D.D.C. Sept. 28, 2022) ("The proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure."), *aff'd*, No. 22-5271, 2023 WL 8101123 (D.C. Cir. Nov. 21, 2023).  "If release of the information increases the risks that a law will be violated or that past violators will escape legal consequences, then it stands to reason that releasing the information would actually impede the interests protected by Exemption 7(E)." *PPSA*, 2024 WL 2864191, at *8 (cleaned up).  That is the situation here: revealing the investigative techniques and procedures withheld under Exemption 7(E) would foreseeably harm the interests protected by that exemption, by risking circumvention of the laws that OIG enforces.  *See* Williams Decl. ¶ 51.

**D.    All reasonably segregable non-exempt information has been released.**

Under FOIA, "any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  An agency has no obligation to segregate non-exempt material that is so "inextricably intertwined" with exempt material that "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value." *Neufeld v. IRS*, 646 F.2d 661, 666 (D.C. Cir. 1981), *abrogated on other grounds by Church of Scientology of Calif. v. IRS*, 792 F.2d 153 (D.C. Cir. 1986); *see also Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 220–21 (D.D.C. 2005) (same).  A court "may rely on government

affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citation omitted). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The CIA affirms that it conducted a detailed, line-by-line review of the responsive records and released all reasonably segregable nonexempt information. Williams Decl. ¶¶ 19, 52. It has therefore complied with its statutory obligations.

## CONCLUSION

For the reasons set forth above, the Court should grant summary judgment to the CIA on the lawfulness of its challenged withholdings.

> Respectfully submitted,
>
> YAAKOV M. ROTH
> Acting Assistant Attorney General
> Civil Division
>
> MARCIA BERMAN
> Assistant Director
> Federal Programs Branch
>
> */s/ James Bickford*
> JAMES BICKFORD
> Trial Attorney (N.Y. Bar No. 5163498)
> United States Department of Justice
> Civil Division, Federal Programs Branch
> 1100 L Street, NW
> Washington, DC 20530
> James.Bickford@usdoj.gov
> Telephone: (202) 305-7632
> Facsimile: (202) 616-8470
>
> *Counsel for Defendant*

Date: May 23, 2025