# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**JASON LEOPOLD**, et al., )
)
      Plaintiffs, )
)
v. )   Case No. 22-cv-453 (DLF)
)
**CENTRAL INTELLIGENCE AGENCY**, )
)
      Defendant. )
)

# DEFENDANT'S COMBINED OPPOSITION TO
# PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND
# REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Very little remains in dispute in this Freedom of Information Act (FOIA) case concerning reports of investigations conducted by the Office of Inspector General (OIG) for the Central Intelligence Agency (CIA). There are no longer any disagreements about the validity of the CIA's withholdings of classified material under Exemption 1. As for the CIA Act, which is incorporated by Exemption 3, Plaintiffs contend that it does not exempt "the organization or functions of the Agency" from disclosure. 50 U.S.C. § 3507. But it plainly does, as Congress clarified by amendment in 2022. The National Security Act is also incorporated by Exemption 3, and Plaintiffs object to the withholding of classification and control markings from a single document, which is authorized by that statute.

Turning to Exemption 7, Plaintiffs question whether nine of the sixty-seven OIG reports at issue here were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The CIA has determined that five of them were in fact compiled for such purposes and has withdrawn its Exemption 7 withholdings from the other four reports. Under Exemption 7(E), the CIA has withheld from two OIG reports information that would reveal the specific types of records and systems that the CIA reviewed in connection with particular investigations. Plaintiffs do not deny that this information comes within the scope of the exemption, but nonetheless dispute whether the CIA "reasonably foresees that disclosure" of this information "would harm an interest protected by" Exemption 7(E). *Id.* § 552(a)(8)(A)(i). As this Court has previously held, "Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm." *Groenendal v. Executive Office for U.S. Attorneys*, 2024 WL 1299333, at *12 (D.D.C. Mar. 27, 2024) (Friedrich, J.) (cleaned up). And moreover, the CIA has shown that the release of

this withheld material would provide access to information that can be used to circumvent a technique used by OIG investigators, which is enough to establish foreseeable harm.

The CIA is therefore entitled to summary judgment on the few withholdings that remain in dispute here.

## ARGUMENT

### A.     No Exemption 1 withholdings remain at issue.

Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  In its motion for summary judgment, the CIA explained that classified information was withheld from fifty-six OIG reports under FOIA Exemption 1. MSJ at 3–7, ECF No. 30-1. Plaintiffs accept the Exemption 1 withholdings from all but one of those reports. Cross-MSJ at 10, ECF No. 33-1.

The report in question concerned a potential Hatch Act violation that was self-reported by a CIA officer. 2d Williams Decl. ¶ 5.  The CIA withheld the name of an Agency employee under both Exemption 1 and Exemption 3.  *Id.* ¶ 6.  No other information was withheld from this record under Exemption 1, *see id.*, and Plaintiffs do not dispute that the names of CIA officers are validly withheld under Exemption 3. Cross-MSJ at 3–4. The CIA has now withdrawn its assertion that Exemption 1 protects the name of the CIA officer, and relies upon Exemption 3 alone for that withholding.[1]  There are thus no disputes about Exemption 1 withholdings left for this Court to resolve.

---

[1] 2d Williams Decl. ¶ 6. As discussed immediately below, the name of this CIA officer is withheld under the CIA Act as incorporated by Exemption 3, rather than the National Security Act. *See id.* ¶ 9.

B.      **The disputed Exemption 3 withholdings were proper.**

Exemption 3 covers "matters that are . . . specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). The CIA has relied on the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), and the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507, to withhold information under Exemption 3. MSJ at 7–9. Plaintiffs accept many of the withholdings under the CIA Act, Cross-MSJ at 3–4, and almost all of the withholdings under the National Security Act, disputing only withholdings from the single report discussed above, *id.* at 10–11.

The CIA originally withheld two categories of information from that report under the National Security Act: the name of a CIA officer and "information in the document's classification block," including "classification and control markings." 2d Williams Decl. ¶ 8; *see id.* ¶ 9. The CIA now withholds the name of this officer under the CIA Act alone, *id.* ¶ 9, which Plaintiffs concede is proper, *see* Cross-MSJ at 3–4. And, as the CIA explained in its opening brief (at 9), disclosing classification and control markings would "reveal details about the sensitivity of the underlying intelligence interest, sensitive collection sources or methods, foreign sensitivities, and procedures for gathering, protecting, and processing intelligence." 1st Williams Decl. ¶ 39. The withholding of this information is therefore justified under the National Security Act. *See Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980) (explaining that the only question for the court is whether the agency has shown that responding to a FOIA request "could reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods").

As to the CIA Act, in its motion for summary judgment the Agency explained that "information about the CIA's functions, regulations, and policies related to CIA programs and operations" was protected if it "would directly reveal functions of the CIA." MSJ at 8 (quoting 1st Williams Decl. ¶ 33). In their cross-motion, Plaintiffs contend that the CIA may not withhold

information about the Agency's own functions under the CIA Act, but only the functions of its personnel.  Cross-MSJ at 3–5.  Plaintiffs' argument, and the cases cited in support of it, rely on an earlier version of the Act and ignore its recent amendments.

Under the CIA Act in its present form, the Agency is "exempted from . . . the provisions of any . . . law which require the publication or disclosure of the organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. § 3507.  This language plainly authorizes the withholding of information that would reveal "functions of the Agency," *id.*, which Plaintiffs challenge here.  The CIA Act previously provided that the Agency was "exempted from . . . the provisions of any . . . law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. § 3507 (2018).  Some courts held that this language did not protect the organization and functions of the Agency itself from disclosure, but only the organization and functions "of personnel employed by the Agency."  *Id.*; *see, e.g.*, *Sack v. CIA*, 53 F. Supp. 3d 154, 168–69 (D.D.C. 2014).

Congress rejected that view in 2022, by enacting a "Clarification Regarding Protection of Central Intelligence Agency Functions" which amended the CIA Act into substantially its present form, severing any grammatical linkage between the protection of the CIA's organization and functions and the statute's reference to Agency personnel.  Pub. L. 117–263, div. F, tit. LXIV, § 6411, 136 Stat. at 3526 (Dec. 23, 2022).  Since that amendment, courts have affirmed that the CIA Act protects "the organization or functions of the Agency" from disclosure.  50 U.S.C. § 3507; *see Driggs v. CIA*, 2025 WL 2242761, at *15 (E.D. Va. Aug. 6, 2025); *WP Co. LLC v. CIA*, 2024 WL 983328, at *9 (D.D.C. Mar. 7, 2024).  The CIA is therefore entitled to summary judgment on the contested withholdings made under the CIA Act as incorporated by Exemption 3.

## C. The disputed Exemption 7 withholdings were proper.

Exemption 7 applies to records that were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Plaintiffs accept that OIG reports concerning potential violations of criminal or civil law are compiled for such purposes within the meaning of Exemption 7, but they question whether nine specific reports do in fact concern such potential violations. Cross-MSJ at 5–7. Upon further investigation, the CIA has determined that five of them do. Three of these reports describe investigations into allegations that officers retaliated against whistleblowers for making protected disclosures, which would constitute a prohibited personnel practice that violates 50 U.S.C. § 3234, *see* 2d Williams Decl. ¶ 13; one report describes an investigation into an alleged conflict of interest that had several criminal statutes within its scope, *id.* ¶ 14; and the final report concerns an investigation into the misuse of Agency information technology systems, which could carry criminal penalties, *id.* ¶ 15. All of these reports were therefore "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). The CIA has withdrawn its claim that Exemption 7 applies to the other four reports in question, although that withdrawal did not result in the release of any additional information. 2d Williams Decl. ¶ 11.

All of the information now withheld under Exemption 7 from the OIG reports at issue in this case was withheld from records "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). And plaintiffs do not take any issue with the substance of the withholdings made under Exemption 7(C), *see* MSJ at 11 n.6, or Exemption 7(D), *see* MSJ at 10–11. Plaintiffs do, however, challenge the withholdings made under Exemption 7(E).

The CIA has withdrawn the application of Exemption 7(E) to information contained in twenty-six of the OIG reports, and has produced the reprocessed reports to Plaintiffs. 2d Williams Decl. ¶ 17. Most of the other Exemption 7(E) withholdings need not be addressed by this Court,

because they rest on other exemptions as well. Only two reports at issue here now contain information withheld under Exemption 7(E) alone: in both cases, the release of the information would "reveal[] the specific types of records and CIA systems . . . reviewed in connection with a particular investigation." *Id.* ¶ 19; *see* 1st Williams Decl. ¶ 51.

Plaintiffs do not dispute that this information comes within the scope of Exemption 7(E), because its release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). But Plaintiffs nonetheless contend that the CIA has not justified the withholding of this information, because it has not shown that it "reasonably foresees that disclosure would harm an interest protected by" Exemption 7(E). *Id.* § 552(a)(8)(A)(i).

As the CIA explained in its opening brief, and as this Court has previously held, "Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm." *Groenendal v. Executive Office for U.S. Attorneys*, 2024 WL 1299333, at *12 (D.D.C. Mar. 27, 2024) (Friedrich, J.) (quoting *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 127–28 (D.D.C. 2021)); *see Holmes-Hamilton v. FBI*, 2024 WL 3924558, at *6 (D.D.C. Aug. 23, 2024). "Put another way, an agency's ability to demonstrate that the release of certain specific material 'might create a risk of circumvention of the law' provides, at minimum, a strong 'clue[ ]' that disclosure will lead to the type of harm that Exemption 7(E) aims to prevent." *Reps. Comm. for Freedom of the Press v. FBI*, 754 F.Supp.3d 56, 67 (D.D.C. 2024) (quoting *Project for Priv. & Surveillance Accountability, Inc. v. DOJ*, 2024 WL 2864191, at *8 (D.D.C. June 6, 2024) (alteration in original)) ("*PPSA*"); *see also Kendrick v. FBI*, 2022 WL 4534627, at *10 (D.D.C.

Sept. 28, 2022) ("The proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure."), *aff'd*, No. 22-5271, 2023 WL 8101123 (D.C. Cir. Nov. 21, 2023).

This line of district court cases is entirely consistent with the earlier decision in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021). In that case, the D.C. Circuit held that "[i]n the context of withholdings made under the deliberative process privilege, the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair internal deliberations." *Id.* at 369–70. In the context of Exemption 7(E), "[i]f release of the information increases the risks that a law will be violated or that past violators will escape legal consequences, then it stands to reason that releasing the information would actually impede the interests protected by Exemption 7(E)." *PPSA*, 2024 WL 2864191, at *8 (cleaned up).

Plaintiffs urge the Court to reject that proposition, in favor of the Eighth Circuit's view that, even in the context of Exemption 7(E), the foreseeable harm standard requires "more than just an expectation of a risk, but an actual expectation of harm." *Fogg v. IRS*, 106 F.4th 779, 788 (8th Cir. 2024). No court in this jurisdiction—or any other—has adopted *Fogg* on that point. And even *Fogg* held that foreseeable harm was established where a release of information within the scope of Exemption 7(E) "would enable . . . wrongdoers to circumvent [certain investigative] procedures, and thus circumvent the law." *Id.* at 789. The Eighth Circuit was thus satisfied with a showing that circumvention of the law would be enabled, and did not require the government to demonstrate that circumvention would actually occur, because the interests protected by Exemption 7(E) are harmed when circumvention of the law is enabled.

The CIA has shown that circumvention would be enabled here, by explaining that an individual who knew "the specific types of records and CIA systems . . . reviewed in connection

with a particular investigation . . . . <u>would have access to information that can be used</u> to circumvent a technique used by OIG investigators," by altering future use or covering up past use of those records and systems.  2d Williams Decl. ¶ 19 (emphasis added); *see id.* ¶ 18.  That is enough to demonstrate foreseeable harm from the release of information protected by Exemption 7(E), even under the Eighth Circuit's interpretation of the foreseeable harm standard.  The CIA is therefore entitled to summary judgment on the two remaining withholdings that rest exclusively on Exemption 7(E).

        **D.**      **All reasonably segregable non-exempt information has been released.**

Finally, Plaintiffs quibble that the CIA did not affirmatively state that its segregability analysis incorporated the foreseeable harm standard.  Cross-MSJ at 12.  The CIA has now done so, *see* 2d Williams Decl. ¶ 20, and is entitled to summary judgment for that reason, as well.

## CONCLUSION

For the reasons set forth above, the Court should grant summary judgment to the CIA on the lawfulness of its challenged withholdings.

                                            Respectfully submitted,

                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director
                                            Federal Programs Branch

                                            */s/ James Bickford*
                                            JAMES BICKFORD
                                            Trial Attorney (N.Y. Bar No. 5163498)
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street, NW
                                            Washington, DC 20530
                                            James.Bickford@usdoj.gov

Telephone: (202) 305-7632
Facsimile: (202) 616-8470

*Counsel for Defendant*

Date: September 26, 2025