**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

JASON LEOPOLD, *et al.*,

     *Plaintiffs*,

v.

CENTRAL INTELLIGENCE AGENCY,

     *Defendant*.

No. 22-cv-453 (DLF)

---

**MEMORANDUM OPINION**

Jason Leopold and his now-former employer, Buzzfeed Inc. (Buzzfeed), bring this action against the Central Intelligence Agency (CIA) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, *et seq*. *See* Compl., Dkt. 1. Leopold and Buzzfeed claim that the CIA violated FOIA by withholding information pertaining to the CIA Inspector General's investigations into sustained or alleged misconduct from 2020 and 2021. Before the Court is the CIA's Motion for Summary Judgment, Dkt. 30, and the plaintiffs' Cross-Motion for Summary Judgment, Dkt. 33. For the reasons that follow, the Court will grant in part and deny in part both motions.

**I.     BACKGROUND**

Jason Leopold, an investigative reporter at Buzzfeed, sought "to report on how the CIA investigates alleged misconduct by its personnel." Def.'s Resp. Pls.' Stmt. Material Facts ¶ 1, Dkt. 39-2. In December 2021, Leopold submitted a FOIA request to the CIA's Office of the Inspector General (OIG) for copies of the concluding documents for investigations that ended in calendar years 2020 and 2021 "concerning misconduct, actual or alleged" to effectuate his reporting. Pls.' Resp. Def.'s Stmt. Material Facts ¶ 1, Dkt. 33-4.

After the CIA failed to issue a timely determination, the plaintiffs initiated the instant lawsuit in February 2022. Def.'s Resp. Pls.' Stmt. Material Facts ¶ 1 (second paragraph labeled "1"). During litigation, the CIA processed 67 reports, releasing 65 in part and withholding two in full. *Id.* at ¶ 2. The plaintiffs do not contest the adequacy of the CIA's search in responding to their FOIA request, *id.* at ¶ 5, but they challenge its withholdings. Initially, the CIA withheld information under FOIA Exemptions 1, 3, 6, 7(C), 7(D), and 7(E), Pls.' Resp. Def.'s Stmt. Material Facts ¶ 4. During the course of briefing on the pending motions, the CIA has since narrowed the scope of its withholdings.

At the outset, the CIA withheld certain information in 56 reports under Exemption 1, Def.'s Mem. Support Mot. Summ. J. 4, Dkt. 30-1, which protects classified information and information "to be kept secret in the interest of national defense or foreign policy," 5 U.S.C. § 552(b)(1). Of particular concern in litigation was the CIA's withholding under Exemption 1 of certain information in Document Number C06948222, which, according to the CIA's *Vaughn* Index, "summariz[ed] investigation and findings regarding an alleged violation of the Hatch Act." Decl. Mary C. Williams Ex. E (*Vaughn* Index), at 25, Dkt. 31-5. The alleged violation involved a CIA employee "who self-reported a potential violation of the Hatch Act" by seeking out "'phone banking' activity to encourage voter turnout." Def.'s Resp. Pls.' Stmt. Material Facts ¶ 11. The CIA applied Exemption 1 to withhold the name of a CIA employee, which the plaintiffs contested, Pls.' Mem. Support Cross-Mot. Summ J. 10–11, and which the CIA later retracted, Supp. Decl. Mary C. Williams ¶ 6, Dkt. 38-1.

In Document Number C06948222 and the other 66 reports, the CIA withheld certain information under Exemption 3. Def.'s Mem. Support Mot. Summ. J. 8 n.3. Exemption 3 incorporates into FOIA "the protections of other shield statutes" that specifically allow for

nondisclosure of certain information.  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 618 (D.C. Cir. 2011).  The CIA relied on two statutes for its application of Exemption 3: the CIA Act of 1949, 50 U.S.C. § 3507 *et seq.*, and the National Security Act of 1947, 50 U.S.C. § 3024 *et seq.*  Def.'s Mem. Support Mot. Summ. J. 8.  Relying on the CIA Act, the CIA withheld information in all 67 reports, *id.* at 8 n.3, and 65 reports faced withholdings under the National Security Act, *id.* at 9 n.4. As it pertains to Document Number C06948222, the CIA elected to initially rely in part on Exemption 3 in conjunction with the CIA Act to withhold the name of the CIA employee, before later relying only on Exemption 3.  Supp. Decl. Mary C. Williams ¶¶ 6, 8–9.  The CIA also relied in part on Exemption 3 in conjunction with the National Security Act to withhold classification and control markings from the document's classification block.  *Id.* at ¶ 8.

Under Exemption 6, the CIA withheld certain information from all 67 reports.  *See generally Vaughn* Index.  Exemption 6 permits the CIA to withhold information about individuals that, if disclosed, "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The plaintiffs do not contest the CIA's withholdings under Exemption 6.  Pls.' Resp. Def.'s Stmt. Material Facts ¶ 5.

The CIA also relied on Exemption 7, which generally protects from disclosure information collected for "law enforcement purposes," 5 U.S.C. § 552(b)(7), to withhold certain information from every responsive report.  In particular, the CIA applied Exemption 7(C), which protects personal information in law enforcement records, to information in all 67 reports.  *See generally Vaughn* Index.  The plaintiffs do not contest those withholdings.  Pls.' Resp. Def.'s Stmt. Material Facts ¶ 5.  The CIA's *Vaughn* Index indicates that four reports initially included information withheld by CIA under Exemption 7(D), which protects law enforcement records that could

reasonably be expected to disclose the identity of a confidential source.[1]  *See Vaughn* Index 3–4, 6, 38.  The CIA generally withheld via Exemption 7(D) information containing the names and certain statements of interviewees, all of which was concurrently withheld under Exemption 7(C).  Def.'s Mem. Support Mot. Summ. J. 10, 11 n.6.  Furthermore, the CIA redacted information from 54 reports under Exemption 7(E).  *Id.* at 11.  The plaintiffs contest the CIA's articulation of foreseeable harm under Exemption 7(E) in litigation, but the CIA has withdrawn its application to certain information in 26 documents.  Supp. Decl. Mary C. Williams ¶ 17.  Withholdings under Exemption 7(E) were accompanied by another exemption in all but two documents, according to the CIA.[2]  In litigation, the plaintiffs challenge the CIA's general application of Exemption 7 to nine documents.  Pls.' Mem. Support Cross-Mot. Summ. J. 6–7, Dkt. 33-1.  The CIA has withdrawn its application of Exemption 7 to four documents,[3] but has maintained its Exemption 7 withholdings for the other five.[4]  Supp. Decl. Mary C. Williams ¶ 11.

Before the Court are the CIA's Motion for Summary Judgment and the plaintiffs' Cross-Motion for Summary Judgment.  The parties, as mentioned, have narrowed the scope of their dispute through the course of this litigation.  Four issues remain: (1) whether there is a statutory basis for certain of the CIA's withholdings under Exemption 3; (2) whether the CIA "compiled for

---

[1] The reports are Document Numbers C06947930, C06947947, C06947957, and C06948246.  *See Vaughn* Index 3–4, 6, 38.

[2] The two reports are Document Numbers C06948224 and C06948229.  Supp. Decl. Mary C. Williams ¶ 19.

[3] The four reports are Document Numbers C06948235, C06948228, C06948217, and C06947930.  Supp. Decl. Mary C. Williams ¶ 11.  Document Number C06947930 was initially one of the four reports that contained information withheld under Exemption 7(D).

[4] The five reports are Document Numbers C06948221, C06948207, C06948208, C06948242, and C06948210.  Supp. Decl. Mary C. Williams 6 n.3.

law enforcement purposes" five reports and certain information therein that were withheld under Exemption 7; (3) whether the CIA adequately articulated the foreseeable harm that would befall disclosure of information withheld under Exemption 7(E); and (4) whether the CIA properly segregated unprotected, disclosed information from withheld information.

## II.    LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Materiality is, of course, a function of the applicable legal standard, which in this case is that an agency responding to a FOIA request must conduct a search reasonably calculated to uncover all relevant documents, and, if challenged, must demonstrate beyond material doubt that the search was reasonable." *Kowalczyk v. DOJ*, 73 F.3d 386, 388 (D.C. Cir. 1996) (citation modified). All facts and inferences must be viewed in the light most favorable to the requester, and the agency bears the burden of showing that it complied with FOIA. *See Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009).

"The system of disclosure established by the FOIA is simple in theory. A federal agency must disclose agency records unless they may be withheld pursuant to one of the nine enumerated exemptions listed in [5 U.S.C.] § 552(b)." *DOJ v. Julian*, 486 U.S. 1, 8 (1988). "[F]ederal courts . . . rely on government affidavits to determine whether the statutory obligations of the FOIA have been met." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam). "Agency affidavits are accorded a presumption of good faith," *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are

not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (citation modified). The D.C. Circuit has recognized that "the vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

## III.    ANALYSIS

For the reasons that follow, the Court will grant in part and deny in part the CIA's Motion for Summary Judgment and grant in part and deny in part the plaintiffs' Cross-Motion for Summary Judgment.

### A.    Exemption 3

Exemption 3 incorporates into FOIA "the protections of other shield statutes," *ACLU*, 628 F.3d at 618, and applies to information "specifically exempted from disclosure by [such] statute[s]," 5 U.S.C. § 552(b)(3). The CIA invoked the CIA Act as a "shield statute" in this case to withhold under FOIA "the full names of CIA employees and other personally identifiable information, including official position titles, salary grade level, identification numbers, contact information, and signatures."[5] Decl. Mary C. Williams ¶ 34, Dkt. 31. It also withheld via the CIA

---

[5] The CIA also invoked the National Security Act to withhold certain information under Exemption 3. The plaintiffs initially contested certain withholdings of information in Document Number C06948222 under Exemption 3 via the National Security Act. Pls.' Mem. Support Cross-Mot. Summ. J. 10–11. During the course of litigation, however, the plaintiffs withdrew their objection, leaving no further contestations of withholdings under Exemption 3 via the National Security Act. Pls.' Reply Support Mot. Summ. J. 2 n.1, Dkt. 40. The Court therefore does not decide whether the withholdings made by the CIA under Exemption 3 via the National Security Act were proper. The CIA also withheld certain information in the same report under Exemption 1, which represented the plaintiffs' only objection to information withheld under Exemption 1. Pls.' Mem. Support Cross-Mot. Summ. J. 10–11. The plaintiffs later withdrew their objection to that withholding. Pls.' Reply Support Mot. Summ. J. 2 n.1. The Court, again, does not decide whether withholdings made by the CIA under Exemption 1 were proper.

Act certain "information about the CIA's functions, regulations, and policies related to CIA programs and operations." *Id.* ¶ 33.

The CIA cites a particular provision of the CIA Act, 50 U.S.C. § 3507, as the statutory hook for its withholdings. Def.'s Mem. Support Mot. Summ. J. 8 ("[T]he CIA shall be exempt from disclosing 'the organization or functions of the Agency, or of the names, official titles, salaries, or numbers of personnel employed by the Agency.'" (quoting 50 U.S.C. § 3507)). The plaintiffs agree that this provision of the CIA Act controls but quote different language. *Compare id.*, *with* Pls.' Mem. Support Cross-Mot. Summ. J. 3 ("The CIA Act exempts the 'organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.'" (quoting 50 U.S.C. § 3507)). The difference—whether "organization" and "functions" modify "of personnel employed by the Agency" or stand alone as their own justifications—is the central dispute.

The parties' quotations differ because of an amendment to the CIA Act that occurred during this litigation. In 2022, as part of the James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Congress enacted a "Clarification Regarding Protection of Central Intelligence Agency Functions" that amended 50 U.S.C. § 3507 to adopt the CIA's now-quoted language. *See* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023, Pub. L. 117–263, § 6411, 136 Stat. 2395, 3526 (2022). The plaintiffs initiated this lawsuit on February 21, 2022, roughly ten months before the amendment became law. Compl. 1. Prior to the amendment, the plaintiffs' quoted language was in the statute.

The difference between the unamended and amended language is material to this case because the CIA's withholdings are permissible under the latter but not the former. The CIA withheld "information about the CIA's functions, regulations, and policies related to CIA

7

programs and operations" because that information would "directly reveal functions of the CIA." Def.'s Mem. Support Mot. Summ. J. 8 (quoting Decl. Mary C. Williams ¶ 33). As the CIA admits, several courts held that the unamended language of the CIA Act "did not protect the organization and functions of the Agency itself from disclosure, but only [those] 'of personnel employed by the agency.'" Def.'s Opp'n Pls.' Cross-Mot. Summ. J. 5, Dkt. 39 (*citing Sack v. CIA*, 53 F. Supp. 3d 154, 168–69 (D.D.C. 2014)); *see, e.g.*, *Phillippi v. CIA*, 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976); *Whitaker v. CIA*, 31 F. Supp. 3d 23, 33–35 (D.D.C. 2014); *Nat'l Sec. Couns. v. CIA*, 960 F. Supp. 2d 101, 174–85 (D.D.C. 2013).

The amended statute, however, severs the grammatical connection between "organizations and functions" and "personnel employed by the agency," establishing two distinct justifications for withholding information: one that pertains to the CIA itself (*i.e.*, "the organization or functions of the Agency") and one that pertains to its employees (*i.e.*, "the names, official titles, salaries, or numbers of personnel employed by the Agency"). The CIA's justification, as contained in its affidavit, for withholding the contested information here is covered by the first category of the amended language because disclosure of the information would "directly reveal functions of the CIA." Decl. Mary C. Williams ¶ 33. The plaintiffs did not contest the CIA's affidavit, to which the Court defers. *See Moore v. CIA*, 2022 WL 2983419, at *10 (D.D.C. July 28, 2022) ("Given that the CIA has provided an uncontradicted affidavit . . . [the records] are properly withheld under the National Security Act."); *id.* at *5 ("In the national security context in particular, an agency's affidavit merits deference.").

The plaintiffs argue that the unamended language governs this suit because "[t]here is a strong presumption against construing new laws to disturb preexisting rights." Pls.' Reply Support Mot. Summ. J. 3, Dkt. 40 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). Indeed,

8

"there exists a judicial presumption, of great antiquity, that a legislative enactment affecting substantive rights does not apply retroactively." *Landgraf*, 511 U.S. at 286 (Scalia, J., concurring). But the Supreme Court has recognized that, outside the criminal context, "the antiretroactivity presumption is just that—a presumption, rather than a constitutional command." *Republic of Austria v. Altmann*, 541 U.S. 677, 692–93 (2004); *see id.* at 693 n.13. After all, while "retroactivity is not favored in the law," a court is also instructed to "apply the law in effect at the time it renders its decision." *Landgraf*, 511 U.S. at 264 (citation modified); *see City of Chicago v. U.S. Dep't of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 423 F.3d 777, 782–83 (7th Cir. 2005) (recognizing this tension).

The Supreme Court articulated the prevailing standard to resolve that tension in *Landgraf*. A statute has retroactive effects if it "attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 270. Deciding whether the presumption holds follows a two-step analysis. First, courts must "determine whether Congress has expressly prescribed the statute's proper reach"; if so, that language controls. *Id.* at 280. If not, courts must then "determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. Importantly, that inquiry "may turn on the nature of the relief sought by the plaintiff." *Singh v. George Wash. Univ. Sch. of Med. and Health Scis.*, 667 F.3d 1, 4 (D.C. Cir. 2011). "When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Landgraf*, 511 U.S. at 273.

As for the first step, the Court agrees with the plaintiffs that there is no clear statement on retroactivity. The amendment offers no evidence of clear congressional intent favoring retroactive

application; instead, the 28-word section merely articulates slight changes to the CIA Act. *See* James M. Inhofe National Defense Authorization Act for Fiscal Year 2023 § 6411.[6] This evidence, or lack thereof, is less telling than the "effective date" provision that the Supreme Court deemed inconclusive of congressional intent in *Landgraf*. 511 U.S. at 257. And FOIA Exemption 3 also lacks a clear statement on retroactivity. *See* 5 U.S.C. § 552(b)(3).

Turning to the second step of the *Landgraf* inquiry, the Court finds that there is no impermissible retroactive effect in applying the amended statutory language to this case. The plaintiffs argue that applying the amendment here would have an impermissible retroactive effect because it would impair their "right to the records they request, subject to the exemptions that then existed" when they filed the instant suit. Pls.' Reply Support Mot. Summ. J. 4. But FOIA does not confer upon plaintiffs an individual right to agency information.

Instead, FOIA merely offers complainants the opportunity to sue for disclosure and seek injunctive relief if an agency improperly withholds information. 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."). In *Afshar v. Department of State*, 702 F.2d 1125 (D.C. Cir. 1983), the D.C. Circuit permitted retroactive recission of an Executive Order over a FOIA claimant's complaint that the resulting document classifications "would work an unfair change in his substantive rights or obligations." *Id.* at 1136 (citation modified); *see id.* at 1136–37. Writing before *Landgraf*'s two-

---

[6] If anything, the amendment favors retroactive application because its title, "Clarification Regarding Protection of Central Intelligence Agency Functions," purports only to clarify FOIA's already-existing protections, not create new ones. That said, the Court does not rely heavily on this title because the body of the amendment contains no indication—express or ambiguous—of intended retroactive effect and "the title [of a statute] may only 'shed light on some ambiguous word or phrase in the statute itself.'" *Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 483 (2001) (quoting *Carter v. United States*, 530 U.S. 255, 267 (2000)).

10

step inquiry, the court did "not agree that FOIA and the then applicable Executive Order create substantive rights that vest in plaintiff at the time of final administrative action" because "FOIA is not the kind of statute that is primarily concerned with individual rights." *Id.* at 1137 (citing *Bradley v. School Bd.*, 416 U.S. 696, 717, 720 (1974) (comparing public right to taxpayer funds to "a right that had matured or become unconditional" in determining retroactive application)).[7] Indeed, the Supreme Court has described FOIA as "exclusively a disclosure statute" that "sets out specific modes of disclosure for certain classes of information." *Chrysler v. Brown*, 441 U.S. 281, 292 (1979). FOIA "only obligates [agencies] to provide access to [documents] which it in fact has created and retained" following Congress's "strong expression of . . . expectations" as to the procedure agencies and complainants must follow. *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 152, 153 (1980). These access-to-information procedures are distinct from the typical cases where the presumption against retroactivity applies—"contractual or property rights, matters in which predictability and stability are of prime importance," *Landgraf*, 511 U.S. at 271—because the procedures primarily consider prospective injunctive relief, *see id.* at 273; *Kissinger*, 445 U.S. at 152–53.

---

[7] The D.C. Circuit's decision in *Electronic Privacy Information Center v. Internal Revenue Service*, 910 F.3d 1232 (DC Cir. 2018) (*EPIC*) is not to the contrary. The court disregarded an IRS rule purporting to shift the burden of proof under FOIA from the agency to the requester because such a rule would "address a requester's substantive right to records." *Id.* at 1238. But the court did not recognize FOIA—or any other statute—as the font of such substantive rights. Instead, as the court explained, "FOIA allows an agency to establish published rules governing the time, place, fees (if any), and procedures to be followed in making a FOIA request." *Id.* (citation modified). In other words, FOIA and agencies' implementing regulations concern *procedural* access. "Thus, the IRS cannot . . . apply its regulations in a way that forces a requester . . . to establish that records are not subject to [a statutorily-defined] disclosure bar." *Id.* at 1239. Nothing about FOIA creates a true individual right, and nothing in the *EPIC* court's brief discussion suggests that the D.C. Circuit implicitly broke from its earlier holding that FOIA did not "create substantive rights that vest in plaintiff" and that "FOIA is not the kind of statute that is primarily concerned with individual rights." *Afshar*, 702 F.3d at 1137.

Neither the D.C. Circuit nor this Court has analyzed the retroactive application of shield statutes under FOIA Exemption 3. But other courts have. In *Southwest Center for Biological Diversity v. U.S. Department of Agriculture*, 314 F.3d 1060 (9th Cir. 2002), the Ninth Circuit held that legislation that authorized new withholdings of information under Exemption 3, passed during the pendency of litigation in district court, did not impose an "impermissible retroactive effect." *Id.* at 1062. The Ninth Circuit rejected the plaintiffs' argument that they "had a right to the information when [they] filed [their] suit . . . and [lost] that right by application of the . . . new exemption." *Id.* Instead, the plaintiffs' relevant "action" was "merely to request or sue for information." *Id.* Accordingly, the plaintiffs did not "take a position in reliance upon existing law that would prejudice [them] when that law was changed." *Id.* The Ninth Circuit affirmed *Southwest* in a later case, noting there that "the only action [the plaintiff] took was to request information and file suit. It engaged in no other action in reliance on then-existing law." *Ctr. for Biological Diversity v. U.S. Dep't of Agric.*, 626 F.3d 1113, 1118 (9th Cir. 2010). Moreover, because the plaintiff sought "the prospective relief of an injunction directing the [agency] to provide it with certain information," and the amendment in question "merely affect[ed] the propriety of this prospective relief," the retroactive application of the amendment was permissible. *Id.* (citing *Landgraf*, 511 U.S. at 273).

The Seventh Circuit took the same tack in *City of Chicago v. U.S. Department of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 423 F.3d at 783. While a district court's order to disclose gun-database information was on appeal, Congress passed a law immunizing such data from legal process. *Id.* at 781. The Seventh Circuit held that it was "proper to apply the law in effect at the time of [its] decision" to bar the plaintiff's request for injunctive relief under FOIA. *Id.* at 783. The court explained that the "intervening [statute] clearly affect[ed] the propriety

of . . . prospective relief" rather than an award of monetary damages and "the relevant event for assessing retroactivity . . . [was] the disclosure of the withheld data, which is a potential future event, not a past, completed event." *Id.* (citation modified).

The Court finds the Seventh Circuit's and Ninth Circuit's analyses persuasive, and it independently reaches a similar conclusion here. The plaintiffs argue that they are being deprived of their "right to the records they requested" because the application of the amendment would "grant Plaintiffs rights to fewer records than it did when Plaintiffs requested the records [and] brought this suit." Pls.' Reply Support Mot. Summ. J. 4. But FOIA does not grant the plaintiffs a right to information in the CIA's records. It instead creates a right to compliance with FOIA procedures and to request injunctive relief for violations. The plaintiffs exercised these rights under FOIA. And, apart from "request[ing] information and fil[ing] suit" for injunctive relief, *see* Compl. 3, the plaintiffs "engaged in no other action in reliance on then-existing law," *Ctr. for Biological Diversity*, 626 F.3d at 1118. Because the amendment to the CIA Act "merely affects the propriety of this prospective relief," its application here is not impermissibly retroactive. *Id.*; *see Landgraf*, 511 U.S. at 273–74 (noting the Court's earlier holding that "'relief by injunction operates *in futuro*,' and . . . the plaintiff ha[s] no 'vested right' in the decree entered by the trial court" (quoting *Am. Steel Foundries v. Tri-City Cent. Trades Council*, 257 U.S. 184, 201 (1921)).

Accordingly, the Court will grant the CIA's Motion for Summary Judgment with respect to withholdings under Exemption 3 and deny the plaintiffs' Cross-Motion for Summary Judgment as to the same.

## B.    Applicability of Exemption 7

Exemption 7 protects from disclosure certain "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). If such records or information "(C) could

13

reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, . . . and, in the case of . . . an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, [or] (E) would disclose techniques and procedures for law enforcement investigations," the agency may withhold the records or information. *Id.* § 552(b)(7)(C)–(E).

The plaintiffs argue that the CIA impermissibly withheld certain information from five reports using Exemption 7 because the reports were not compiled for "law enforcement purposes." *See* Pls.' Mem. Support Cross-Mot. Summ. J. 5–7; Supp. Decl. Mary C. Williams ¶ 11. Whether information was "compiled for law enforcement purposes" is the "threshold" inquiry for an Exemption 7 withholding. *Elec. Priv. Info. Ctr. v. DHS*, 777 F.3d 518, 522 (D.C. Cir. 2015). The plaintiffs do not contest the other elements of the Exemption 7 withholdings from the five reports. *See* Pls.' Mem. Support Cross-Mot. Summ. J. 6–7 & n.3.[8] As such, the Court will consider whether the reports and information that the CIA withheld under Exemption 7 from Document Numbers C06948242, C06948210, C06948208, C06948221, and C06948207, *see* Supp. Decl. Mary C. Williams 6 n.3, were "for law enforcement purposes" and therefore proper under FOIA.

1.    *Document Numbers C06948210, C06948208, and C06948207*

As an initial matter, the plaintiffs do not contest the CIA's withholdings under Exemption 7(C). Pls.' Resp. Def.'s Stmt. Material Facts ¶ 5. The CIA withheld certain information from all five contested reports via Exemption 7(C), and it relied exclusively on Exemption 7(C) as its

---

[8] The plaintiffs initially contested the application of Exemption 7 to nine reports. Pls.' Mem. Support Cross-Mot. Summ. J. 6–7. The CIA later withdrew its claim that Exemption 7 applied to four of the nine reports, leaving only five reports contested. Def.'s Opp'n Pls.' Cross-Mot. Summ. J. 6; Supp. Decl. Mary C. Williams ¶ 11. Those five reports do not include information withheld via Exemption 7(D). *See Vaughn* Index 20–22, 24–25, 36.

justification for withholding "information compiled for law enforcement purposes" in three of the five reports: Document Numbers C06948210, C06948208, and C06948207. *See Vaughn* Index 20–22 (Document Nos. C06948207, C06948210, and C06948208), 24–25 (Document No. C06948221), 36 (Document No. C06948242). "[A]dmissions in the pleadings are binding." *Nat'l Ass'n of Life Underwriters, Inc. v. Comm'r*, 30 F.3d 1526, 1530 (D.C. Cir. 1994); *accord Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them."); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court."). Not only did the plaintiffs themselves concede the CIA's withholdings under Exemption 7(C), Pls.' Resp. Def.'s Stmt. Material Facts ¶ 5, but the CIA's opening brief references that concession, Def.'s Mem. Support Mot. Summ. J. 11 n.6, to which the plaintiffs do not respond, *see* Pls.' Mem. Support Cross-Mot Summ. J. Because the plaintiffs purport not to contest the CIA's withholdings under Exemption 7(C) in their Statement of Material Facts and further conceded the issue at summary judgment by not contesting the CIA's concession argument, *see Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014), the Court will accordingly treat those withholdings under Exemption 7(C) as lawful for the purposes of summary judgment. Thus, as it relates to Document Numbers C06948210, C06948208, and C06948207, the Court will grant the CIA's Motion for Summary Judgment and deny the plaintiffs' Cross-Motion for Summary Judgment.

2.    *Document Numbers C06948242 and C06948221*

For the other two reports—Document Numbers C06948242 and C06948221—the CIA withheld certain information under Exemption 7(C) and/or 7(E). *See Vaughn* Index 24–25, 36.

As provided to the Court in the Declaration of Jason Leopold, all information that the CIA withheld under Exemption 7(E) in Document Numbers C06948242 and C06948221 was concurrently withheld under Exemption 7(C). *See* Decl. Jason Leopold 10–12, 59–62, Dkt. 33-2. Given the plaintiffs' Exemption 7(C) concession, *see ante* at 15, the plaintiffs agree that the information withheld by both Exemption 7(C) and Exemption 7(E), if not the entirety of each report, was "compiled for law enforcement purposes." Accordingly, with respect to information concurrently withheld from Document Numbers C06948242 and C06948221 under Exemptions 7(C) and 7(E), the Court will grant the CIA's Motion for Summary Judgment and deny the plaintiffs' Cross-Motion for Summary Judgment.

To the extent that there is any information in the two reports withheld under Exemption 7(E) that is not concurrently covered by Exemption 7(C),[9] however, the CIA has demonstrated that Document Number C06948242 was "compiled for law enforcement purposes." It has not demonstrated the same for Document Number C06948221.

First, the CIA OIG receives no deference from this Court as to the purposes it claims for withholding information under FOIA Exemption 7 because it is a "mixed-function agency." *See Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982). The CIA's declarant described the CIA OIG as tasked with "provid[ing] objective and independent oversight into the programs and operations of the CIA", specifically for "violations of federal criminal law, and Agency regulations and policies related to CIA programs and operations." Decl. Mary C. Williams ¶¶ 51, 44. The CIA

---

[9] The CIA's declarant stated that there are only two reports—Document Numbers C06948224 and C06948229 that include information withheld under Exemption 7(E) alone. Supp. Decl. Mary C. Williams ¶ 19. In the record provided by the plaintiffs, however, the Court identified another instance in which CIA withheld information only under Exemption 7(E), *see* Decl. Jason Leopold 189 (Document Number C06948222), to which the plaintiffs do not contest the application of Exemption 7 as a general matter.

also described the contents of the requested records as involving "allegations of fraudulent expenses by CIA officers, misuse of Agency systems, and theft, among other subjects."  Def.'s Mem. Support Mot. Summ. J. 1.  "[G]eneral agency oversight" of officers and systems involving violations of federal criminal law and internal regulations falls squarely within "mixed-function agency" actions.  *Pratt*, 673 F.2d 419 (citing *Rural Hous. All. v. Dep't of Agric.*, 498 F.2d 73, 81–82 (D.C. Cir. 1974)); *Jefferson v. DOJ, Off. of Prof'l Resp.*, 284 F.3d 172, 179 (D.C. Cir. 2002) (determining that DOJ's Office of Professional Responsibility was a mixed-function agency because it investigates "not only . . . violations of law . . . , but breaches of internal Department guidelines").  Because the CIA OIG is a "mixed-function" agency rather than "an agency whose principal mission is criminal law enforcement," this Court "must scrutinize with some skepticism" the purposes for which CIA claims it withheld information under FOIA Exemption 7.  *Pratt*, 673 F.2d at 418.

A document is "compiled for law enforcement purposes" under FOIA if the agency can demonstrate "(1) 'a rational nexus between the investigation and one of the agency's law enforcement duties;' and (2) 'a connection between an individual or incident and a possible security risk or violation of federal law.'"  *Ctr. for Nat'l Sec. Stud. v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003) (quoting *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998)); *Pratt*, 673 F.2d at 420 (establishing the two-prong test).  The materials need not be compiled for a specific investigation; "guidelines, techniques, and procedures for law enforcement investigations and prosecutions outside of the context of a specific investigation" may also qualify.  *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002).

Turning first to Document Number C06948242.  The CIA's declarant stated that the report involved a conflict-of-interest investigation concerning allegations that a CIA officer had a

17

personal financial interest in a CIA contractor for which "several criminal statutes were within the scope of the CIA's OIG investigation, including 18 U.S.C. §§ 203, 208, 371, 1349, and 1001." Supp. Decl. Mary C. Williams ¶ 14.  The plaintiffs argue that the declarant's statement does not satisfy the CIA's burden because it is ambiguous, and the unredacted portion of the report says "this matter was investigated as potential violation(s) of" two "Agency Regulation[s]."  Pls.' Reply Support Mot. Summ. J. 7–8.

The CIA's assertion that the report was created after an investigation that had several criminal statutes within its scope establishes a "rational nexus" between the investigation and the CIA's law enforcement duties.  As to the second prong of the *Pratt* test, "investigations which focus directly on specifically alleged illegal acts [that] could, if proved, result in civil or criminal sanctions" serve a "law enforcement purpose" under Exemption 7.  *Bartko v. DOJ*, 898 F.3d 51, 64 (D.C. Cir. 2018) (quoting *Rural Hous. All.*, 498 F.2d at 81) (citation modified); *Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) (noting that the agency's declarations must "establish a connection between the assertedly exempt records and an inquiry into a possible security risk or violation of federal law" (citation modified)).  Document C06948242 involved a specific alleged illegal act—conflict of interest—that could result in civil or criminal sanctions, with the "several criminal statutes within the scope" of the investigation.[10]  *See, e.g.*, 18 U.S.C. § 216 (allowing the Attorney General to "bring a civil action" for violations of 18 U.S.C. § 203 or § 208).  The fact

---

[10] The Court notes that the CIA says these statutes are criminal, though the relevant statutes provide for civil enforcement only.  The distinction is immaterial because criminal or civil sanctions can satisfy the second prong of the *Pratt* test.  *See Bartko*, 898 F.3d at 64.

that specific statutes do not appear on the face of the report does not change the fact that the underlying illegal act could result in sanctions.[11]

The plaintiffs rely on *Bartko* to argue that the "mere possibility of a legal violation" is insufficient to qualify a document for Exemption 7.  *See* Pls.' Reply Support Mot. Summ. J. 8.  But the facts here detail more than a "mere possibility" that some law has been violated.  Even though the face of the report gestures generally to a conflict of interest, the CIA's declarant identified specific civil and criminal statutes that the conduct alleged in the report may have violated: 18 U.S.C. §§ 203, 208, 371, 1349, and 1001.  Supp. Decl. Mary C. Williams ¶ 14.  That specificity was lacking in *Bartko*, where the defendant agency's declarant "offered only a bare-bones declaration" that simply stated the investigated actions "could result in civil or criminal penalties" without identifying which penalties may apply.  898 F.3d at 65.  Moreover, the CIA OIG informed the CIA's declarant that the above-mentioned statutes "were within the scope of the . . . investigation."  Supp. Decl. Mary C. Williams ¶ 14.  *Bartko* provides that "[t]he purpose of the investigation is 'the critical factor,'" 898 F.3d at 64 (quoting *Rural Hous. All.*, 498 F.2d at 82), and the CIA's declarant attests that CIA OIG described the purpose of the investigation as focusing on an illegal act that could impose civil or criminal sanctions.  Document Number C06948242 was thus "compiled for law enforcement purposes" within Exemption 7's meaning.

---

[11] Because the CIA "demonstrate[d] that there was a legitimate basis for the investigation, the burden shifts" to the requesting party—here, the plaintiffs—to "produce evidence that the asserted law enforcement rationale was merely pretextual."  *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996) (citing *Doe v. FBI*, 936 F.2d 1346, 1354 (D.C. Cir. 1991)).  The plaintiffs argue that there exists "a contemporaneous OIG practice of identifying at-issue federal statutes when there were any" because 60 of the 65 reports released by the CIA identify on their face at least one federal statute.  Pls.' Reply Support Mot. Summ. J. 8.  The plaintiffs' speculation of a "contemporaneous OIG practice" as demonstrating a pretextual law enforcement rationale does not meet their burden.  *See SafeCard Servs., Inc.*, 926 F.2d at 1200 ("Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims." (citation modified)).

19

The CIA has failed to demonstrate the same for Document Number C06948221.  The CIA's declarant described the report, along with two others, as "discuss[ing] the CIA OIG's investigation into allegations that officers retaliated against whistleblowers for making protected disclosures." Supp. Decl. Mary C. Williams ¶ 13.  If proven, the conduct would violate 50 U.S.C. § 3234, and "[p]enalties for such violations include fines or administrative action."  *Id.*  But, at the time the report was compiled in 2021, violations of 50 U.S.C. § 3234 did not include civil or criminal sanctions.  *See* Intelligence Authorization Act for Fiscal Year 2014, Pub. L. No. 113–126, § 601(c), 128 Stat 1390, 1416.  Instead, the statute provided only that "the President shall provide for the enforcement of this section," with no reference to whistleblower protections or penalties.  *Id*.

Document Number C06948221 fails the second prong of the *Pratt* test because it does not necessarily pertain to "specifically alleged illegal acts [that] could, if proved, result in civil or criminal sanctions."  *Bartko*, 898 F.3d at 64 (citation modified).  While "[t]he character of the statute violated would rarely make a material distinction, because the law enforcement purposes protected by [E]xemption 7 include both civil and criminal purposes," the relevant statute violated must impose some civil or criminal sanction.  *Rural Hous. All.*, 498 F.2d at 81 n.46.  The CIA argues that the violations in the report could give rise to "fines or administrative action" under the amended statute.  Supp. Decl. Mary C. Williams ¶ 13.  Typically, fines would represent a sufficient sanction to demonstrate "law enforcement purposes."  *See, e.g.*, *Kay v. FCC*, 867 F. Supp. 11, 18 (D.D.C. 1994) (finding that the "possible imposition" of a fine pursuant to federal statute established "civil or criminal sanctions" for the purposes of the second prong of the *Pratt* test).  But at the time the CIA compiled the report in Document Number C06948221, the whistle-blower protection statute provided for neither criminal nor civil sanctions, and "[t]he purpose of the

20

investigation is 'the critical factor.'" *Bartko*, 898 F.3d at 64 (quoting *Rural Hous. All.*, 498 F.2d at 82).

Moreover, the CIA did not provide further detail as to what civil or criminal sanctions may be imposed prospectively for potential violations discussed in the report, including whether the amended 50 U.S.C. § 3234(d) could be imposed retroactively or whether enforcement would be timely. The direction for presidential enforcement does not necessarily include enforcement via civil or criminal sanctions, and the mere possibility of a legal violation is not sufficient to show compilation for "law enforcement purposes," because "[a]ny internal auditing or monitoring conceivably could result in disciplinary action," which would "swallow[] up" FOIA. *Rural Hous. All.*, 498 F.2d at 81. The CIA "bears the burden of showing on a case-by-case basis that any requested records were actually compiled for law-enforcement, rather than employment-supervision, purposes." *Bartko*, 898 F.3d at 65. Absent information in the record as to whether this specific report could be referenced for a "law enforcement purpose," Document Number C06948221 represents material compiled for "customary surveillance of the performance of duties by government employees." *Jefferson*, 284 F.3d at 177. Such information does not enjoy protection from disclosure via Exemption 7. *Id.* The CIA accordingly failed to demonstrate that Document Number C06948221 was "compiled for law enforcement purposes."

*    *    *

With respect to Document Numbers C06948210, C06948208, C06948207, and C06948242, the Court will grant the CIA's Motion for Summary Judgment and deny the plaintiffs' Cross-Motion for Summary Judgment. With respect to Document Number C06948221, to the extent that the CIA has withheld any information under Exemption 7 that is not covered by Exemption 7(C), the Court will grant the plaintiffs' Cross-Motion for Summary Judgment and

21

deny the CIA's Motion for Summary Judgment.   The Court will order the CIA to remove redactions from Document Number C06948221 that rely on a withholding under Exemption 7 and that do not overlap with a proper withholding.

### C.    Foreseeable Harm Requirement of Exemption 7(E)

Exemption 7(E) protects from disclosure information "compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."   5 U.S.C. § 552(b)(7)(E).   Under Exemption 7(E), the CIA withheld "information [that] identifies the CIA systems searched and the records OIG sought as part of its investigations."   Decl. Mary C. Williams ¶ 51.   It further withheld information that would identify "the sources who report misconduct and the OIG's methods for investigating such reports."   *Id.*

The CIA's declarant stated that some of the information withheld under Exemption 7(E), if disclosed, "would reveal the extent to which the OIG records, catalogs, or otherwise compiles specific information as part of its investigations."   *Id.*   The declarant elaborated that "the withheld information in this case would reveal the specific types of records the CIA's OIG reviews, the specific systems searched, and the relevant personnel or subject matter experts interviewed in connection with a particular investigation."   Supp. Decl. Mary C. Williams ¶ 18.   An individual, according to the CIA's declarant, "would" more easily be able to "circumvent the CIA OIG's techniques and procedures" by, "for example . . . identifying the specific records reviewed or databases searched and take steps to avoid detection."   *Id.*   The CIA initially withheld such information from 54 of the produced reports.   *See generally Vaughn* Index.   But the agency later

22

withdrew its application of Exemption 7(E) to information contained in 26 of those reports.  Supp. Decl. Mary C. Williams ¶ 17.

As an initial matter, this Court has held that "Exemption 7(E) by its own terms already requires that an agency show a risk of foreseeable harm."  *Groenendal v. Exec. Off. for U.S. Att'ys*, 2024 WL 1299333, at *12 (D.D.C. Mar. 27, 2024) (quoting *Reps. Comm. for Freedom of the Press v. CBP*, 567 F. Supp. 3d 97, 127–28 (D.D.C. 2021)).  Such a showing by an agency, particularly when the harm is circumvention, "provides, at minimum, a strong 'clue' that disclosure will lead to the type of harm that Exemption 7(E) aims to prevent."  *Reps. Comm. for Freedom of the Press v. FBI*, 754 F. Supp.3d 56, 67 (D.D.C. 2024) (quoting *Project for Priv. & Surveillance Accountability, Inc. v. DOJ*, 2024 WL 2864191, at *8 (D.D.C. June 6, 2024) (*PPSA*)) (citation modified); *see also Kendrick v. FBI*, 2022 WL 4534627, at *10 (D.D.C. Sept. 28, 2022) ("The proper assertion of 7(E) goes a long way to show the risk of foreseeable harm from disclosure."), *aff'd*, No. 22-5271, 2023 WL 8101123 (D.C. Cir. Nov. 21, 2023).  Under the D.C. Circuit's precedent, "the foreseeability requirement means that agencies must concretely explain how disclosure 'would'—not 'could'—adversely impair [an exemption's protected interest]."  *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369–70 (D.C. Cir. 2021).  Disclosure "would 'actually impede' the interests protected by Exemption 7(E)" if "release of the information 'increases the risk[] that a law will be violated or that past violators will escape legal consequences.'"  *PPSA*, 2024 WL 2864191, at *8 (citation modified and emphasis omitted).  And it is "obvious" that one interest protected by Exemption 7(E) "is preventing 'circumvention of the law.'"  *Reps. Comm.*, 754 F. Supp. 3d at 67 (citation modified).

Here, the CIA adequately demonstrated that disclosure of the information withheld under Exemption 7(E) would risk foreseeable harm.  Its declarant specifically stated that release of the

withheld information would lead to an "increased risk that this information would be used to circumvent the CIA OIG's techniques and procedures." Supp. Decl. Mary C. Williams ¶ 18. That "increased risk" would actually impede the interests protected by Exemption 7(E): preventing circumvention of the law. Accordingly, the CIA has satisfied the foreseeability requirement for the application of Exemption 7(E) to information in the 26 relevant documents.

The plaintiffs argue that an agency must show that disclosure "*would lead* to circumvention, not merely *create a risk* of it,*"* and that the CIA failed to do so. Pls.' Reply Support Mot. Summ. J. 11 (citing *Fogg v. IRS*, 106 F.4th 779, 788 (8th Cir. 2024)). They contend that the CIA "musters only that disclosure would create an '*increased risk* that [disclosed] information would be used to circumvent the CIA OIG's techniques and procedures.'" *Id.* at 12 (emphasis in original).

In light of D.C. Circuit precedent on foreseeability and this Court's earlier decisions, the plaintiffs' reliance on the Eighth Circuit's heightened standard in *Fogg v. Internal Revenue Service*, 106 F.4th at 788, is misplaced. And, even if *Fogg* were controlling, the CIA met its requirements. Under *Fogg*, the agency must show "more than just an expectation of a risk, but an actual expectation of harm" from disclosure. *Id.* Much like the declarant in that case, the CIA's declarant provided detailed specifics of the sorts of information that would be disclosed—records reviewed, systems searched, and personnel interviewed—and specifics on how that new information "would lead to foreseeable harm." *Id.* at 790. Here, the new information "would be used to circumvent the CIA OIG's techniques and procedures." Supp. Decl. Mary C. Williams ¶ 18. While the CIA's declarant then describes the circumvention examples less forcefully—for example, describing that "an individual *may* be able to identify the specific records reviewed"—

the declaration is specific enough as to the CIA's expectation of certain harms to meet *Fogg*'s heightened test.  *See* Supp. Decl. Mary C. Williams ¶ 18.

The Court will thus grant the CIA's Motion for Summary Judgment with respect to its showing of foreseeable harm under Exemption 7(E) and deny the plaintiffs' Cross-Motion for Summary Judgment.

### D.    Segregability

When a record contains information that the agency may exempt from disclosure, FOIA requires that any "reasonably segregable" information must be disclosed after the agency redacts the exempt information, 5 U.S.C. § 552(b), unless the non-exempt information is "inextricably intertwined with exempt portions," *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  The agency must demonstrate that all reasonably segregable information was released by offering a "detailed justification" rather than "conclusory statements." *Id.* at 261.  Segregability applies at both the exemption level and the foreseeable harm level. *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024).  The agency must show that it properly segregated both information not covered by an exemption and information that may be covered by an exemption but that "could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects."  *Id*.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  "Courts may [also] rely on agency affidavits to determine that documents withheld pursuant to a valid exemption contain no reasonably segregable information." *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 695 (D.C. Cir. 2016).

The plaintiffs contest the CIA's adherence to FOIA's segregability requirements.  They contend that the CIA did not acknowledge it had performed a segregability review of the withheld information with respect to the foreseeable harm requirement.  Pls.' Cross-Mot. Summ. J. 12.  In a supplemental declaration filed after the plaintiffs' cross-motion, the CIA's declarant stated that the "CIA's segregability analysis considered whether any additional information could be segregated and released without causing foreseeable harm to the interests protected by the exemptions applied in this case."  Supp. Decl. Mary C. Williams ¶ 20.  Seeing neither evidence of bad faith nor evidence to the contrary, the Court finds that the CIA released all reasonably segregable information.

The plaintiffs also contest that the CIA generally "failed to meet its segregability burden" because it "took an incorrect view of what it may lawfully withhold" with respect to the plaintiffs' disagreements over the CIA's use of certain exemptions.  Pls.' Cross-Mot. Summ. J. 12.  Having found that the CIA properly applied the exemptions that are contested in this case with the possible exception of Document Number C06948221, *see ante* at 21–22, the Court finds that the CIA met its segregability burden.  To the extent further information initially withheld from Document Number C06948221 is released consistent with this memorandum opinion, the CIA must ensure that any such information is properly released consistent with its segregability requirements.

**CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part the CIA's Motion for Summary Judgment, Dkt. 30, and grants in part and denies in part the plaintiffs' Cross-Motion for

Summary Judgment, Dkt. 33.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 30, 2026